UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JAMES STEWART,

          Plaintiff,          Case No. 2:20-237

v.                             Honorable Paul L. Maloney

CONNIE HORTON et al.,

          Defendants.
_____/

## **OPINION**

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Horton, Corrigan, Spiker, and Washington. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's Eighth Amendment claim for harassment, Plaintiff's Fourth Amendment claim related to the search of his cell, and Plaintiff's Fourteenth Amendment claim for informational privacy. Plaintiff's Eighth Amendment claim for excessive force against Defendant Ortiz and his Eight Amendment claim

that Defendants Miller, Wollan, and MacDowell were deliberately indifferent to his serious medical needs remains in the case.

## Discussion

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden Connie Horton, Quarry Unit Officer Unknown Ortiz, Nurse Amy MacDowell, Deputy Warden Unknown Corrigan, MDOC Director Heidi Washington, Resident Unit Manager T. Corey Spiker, Acting Assistant Deputy Warden J. Miller, Quarry Unit Officer Unknown Wollan, and Quarry Unit Officer Unknown Miller.

Plaintiff alleges that on August 21, 2020, Defendant Ortiz called Plaintiff a "crippled white supremacist" and threw his crutches on the ground. (Compl., ECF .4.) On August 24, 2020, Ortiz sexually harassed Plaintiff by making a comment about a tattoo on genitals.[1] A few days later, on August 31, 2020, Ortiz uncuffed Plaintiff's right wrist then, for no reason, aggressively pulled on his left wrist and threatened Plaintiff by demanding that he sign-off on a grievance. Plaintiff was yelling for Spiker to come assist him due to Oritz's conduct.

Later that day, Plaintiff asked Unknown Miller and Wollan to get health care for him because his wrist was swollen and excruciatingly painful, but Unknown Miller and Wollan refused to do so. Wollan also fabricated a misconduct charge against Plaintiff. Also on August 31, Miller and Ortiz "tore [Plaintiff's] cell up along with personal items" which demonstrates their "continu[ed] harassment." (*Id.* at PageID.5.)

---

[1] The Complaint does not make clear whether Ortiz was commenting on a tattoo on Plaintiff's genitals or his own.

On September 1, 2020, Defendant Ortiz orally disclosed confidential records about Plaintiff "on the rock." (*Id.* at PageID.4.) Later that morning, when Defendant MacDowell was making her rounds, Plaintiff tried to explain to her that he was having wrist pain and swelling, but she ignored him. On September 1, 2020, Ortiz disrespected Plaintiff's religion. He also "divulged" personal information about the mother of Plaintiff's children and his case. (*Id.*) On September 9, 2020, Defendant Ortiz antagonized Plaintiff by calling him names and harassing him. In addition, on numerous occasions, Ortiz disrespected Plaintiff's religion and discussed personal confidential records.

Plaintiff repeatedly attempted to resolve with Defendant J. Miller the issue Plaintiff was having with Ortiz, but Miller just laughed. Plaintiff sent numerous kites to Spiker and Corrigan with no results. Plaintiff also asserts that Washington could have separated Ortiz and Plaintiff, but she did not.

Plaintiff alleges claims for Eighth Amendment violations based on harassment, excessive force, and deliberate indifference to a serious medical need, Fourth Amendment violations related to the search of his cell, and Fourteenth Amendment violations for disclosure of Plaintiff's personal information.

Plaintiff seeks money damages and declaratory relief.

### II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Supervisory Liability

Plaintiff alleges that Defendants Horton, Corrigan, J. Miller, and Spiker[2] ignored his complaints about Oritz's conduct and that Defendant Washington could have but did not separate Plaintiff from Ortiz.

Plaintiff fails to allege that Defendants Horton, Corrigan, J. Miller, Spiker and Washington took any action against him, other than to suggest that they failed to adequately supervise their subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

---

[2] Plaintiff alleges that complained to Defendant J. Miller about Defendant Ortiz's harassment and called out to Defendant Spiker for help with Ortiz's behavior, but these allegations are too vague and conclusory to state a claim against Defendants J. Miller and Spiker. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts to show that Defendants Horton, Corrigan, J. Miller, Spiker, and Washington encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in that conduct. Indeed, he fails to allege any facts at all about their conduct other than to suggest that Defendants Horton and Corrigan failed to act on his grievances, Defendants J. Miller and Spiker did not respond to an oral complaint about Defendant Ortiz's harassment, and Defendant Washington failed to act to separate him from Ortiz—although he does not suggest any reason why she would know there was a need to act. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Ortiz's conduct toward Plaintiff. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 action is premised on nothing more than respondeat superior

6

liability, his action fails to state a claim against Defendants Horton, Corrigan, J. Miller, Spiker and Washington.

## IV. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is

7

incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### A. Harassment

Plaintiff alleges that Defendant Ortiz verbally harassed him on numerous occasions, verbally disrespected his religion, and verbally sexually harassed him.

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle

threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Ortiz arising from his alleged verbal harassment.[3]

### B. Excessive Force

Plaintiff alleges that Ortiz threw his crutches on the ground and uncuffed his right wrist then aggressively pulled at his left wrist for no reason causing swelling and pain.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

---

[3] Even Ortiz's comments about tattooed genitalia do not state an Eighth Amendment violation because neither verbal sexual harassment, standing alone, nor minor isolated incidents of sexual touching coupled with occasional offensive sexual remarks rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Payette v. Briggs*, No. 2:09-cv-279, 2010 WL 775783 at *3–4 (W.D. Mich. Mar. 1, 2010) (citing *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516, 532 (2002), and *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. 1998)); *Butts v. Wiley*, No. 2:08-cv-235, 2010 WL 748249, at *3 (W.D. Mich. Feb. 26, 2010); *Jackson v. Holm*, No. 2:09-cv-98, 2009 WL 2413283, at *3 (W.D. Mich. Aug. 4, 2009).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37-39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

At this juncture, Plaintiff's allegations of excessive force, although sparse, are sufficient to proceed to service against Defendant Ortiz.

### C. Deliberate Indifference to a Serious Medical Need

Plaintiff alleges that after Defendant Ortiz aggressively pulled at his left wrist, he was ignored by Defendants Unknown Miller and Wollan when he asked them to get health care for him because of pain and swelling in his wrist and was ignored by Defendant MacDowell when he tried to get her attention while she was doing medical rounds.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment

is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 466, 451 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

At this juncture, Plaintiff's Eighth Amendment claim for deliberate indifference to a serious medical need is sufficient to proceed to service against Defendants Miller, Wollan and MacDowell.

## V.     **Fourth Amendment**

Plaintiff alleges that Defendants Ortiz and Unknown Miller tore up his cell and personal belongings. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim similar to Plaintiff's. In that case, a prison official searched a prisoner's cell and destroyed some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal

security." *Id.* at 523–24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527-28.

For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell[.]" *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Applying *Hudson* to Plaintiff's claim, the Fourth Amendment did not prohibit Ortiz and Miller from searching his cell or his personal belongings. Therefore, Plaintiff does not state a Fourth Amendment claim.

## VI. Informational Privacy

Plaintiff alleges that Ortiz twice verbally disclosed his personal information in violation of his right to privacy under the Fourteenth Amendment.

> Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in "independence in making certain kinds of important decisions," *Whalen v. Roe*, 429 U.S. 589, 599–600 & n.26 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education." (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976)). The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id*. at 599, 603–04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in nondisclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law

> that provided for the review and classification of presidential materials by professional archivists).

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). Plaintiff's claim implicates the latter interest, i.e., the "individual's right to control the nature and extent of information released about that individual," which "has been coined an informational right to privacy." *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998).

In *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981), the Sixth Circuit reviewed the Supreme Court's opinions regarding the right to privacy, including *Whalen*, *Nixon*, and *Paul*, and concluded that "the Constitution does not encompass a general right to nondisclosure of private information." *Id*. at 1087–90. The court declined to "recognize a general constitutional right to have disclosure of private information measured against the need for disclosure," reasoning that "[t]he Framers . . . cannot have intended that the federal courts become involved in an inquiry nearly as broad balancing almost every act of government . . . against its intrusion on a concept so vague, undefinable, and all-encompassing as individual privacy." *Id*. at 1089–90. Consequently, the Sixth Circuit restricts the constitutional right to informational privacy to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id*. at 1090 (citations omitted). "Only after a fundamental right is identified should the court proceed to the next step of the analysis—the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private." *Lambert*, 517 F.3d at 440.

Applying these standards, the Sixth Circuit repeatedly has rejected claims asserting a constitutional right to nondisclosure of personal information. *See, e.g.*, *Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) (city's requirement that employees returning from sick leave

14

disclose the nature of their illness to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270–71 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (school's disclosure of information to Children Services not a violation of plaintiff's constitutional rights); *Barber v. Overton*, 496 F.3d 449, 455–57 (6th Cir. 2007) (release of guards' birth dates and social security numbers did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *DeSanti*, 653 F.2d at 1091 (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various state agencies). Indeed, the Sixth Circuit has recognized an "informational-privacy interest of constitutional dimension" in only two instances: (1) where the release of personal information could lead to bodily harm, as in *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998) (dissemination of undercover officers personnel file to members of violent street gang some of whom officers testified against at trial); and (2) where the information released was of a "sexual, personal, and humiliating nature," as in *Bloch*, 156 F.3d at 684 (nonconsensual disclosure at press conference of details of plaintiff's rape).

The disclosures alleged by Plaintiff do not implicate a fundamental interest. Indeed, Plaintiff does not even reveal the nature of the initial disclosure, and only vaguely mentions the second disclosure as being related to the mother of his children and his case. Plaintiff does not

15

state a Fourteenth Amendment claim because the disclosures he alleges do not implicate a fundamental interest protected by the right to privacy under the Fourteenth Amendment.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Horton, Corrigan, J. Miller, Spiker and Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants:  Plaintiff's Eighth Amendment claim for harassment, Plaintiff's Fourth Amendment claim related to the search of his cell, and Plaintiff's Fourteenth Amendment claim of informational privacy.  Plaintiff's Eighth Amendment claim against Ortiz for excessive force and his Eighth Amendment claim against Defendants Unknown Miller, Wollan and MacDowell for deliberate indifference to a serious medical need remain in the case.

An order consistent with this opinion will be entered.


Dated:   February 19, 2021                           /s/ Paul L. Maloney
                                                                        Paul L. Maloney
                                                                        United States District Judge